WILLIAM E. AND ELIZABETH M. STRAW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Straw v. Commissioner
Docket No. 25217-89
United States Tax Court
T.C. Memo 1991-524; 1991 Tax Ct. Memo LEXIS 573; 62 T.C.M. (CCH) 1056; T.C.M. (RIA) 91524; October 21, 1991, Filed *573 Decision will be entered under Rule 155. William E. Straw, pro se. Ursula P. Gee, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioners' Federal income tax for 1985 in the amount of $ 10,692, and an addition to tax of $ 3,068.75 under section 6651(a)(1). [1] Prior to trial, respondent conceded that petitioners are not liable for the section 6651(a)(1) addition to tax. The parties have also reached agreement with respect to a part of petitioners' charitable contribution deductions. Respondent's concession of the section 6651(a)(1) addition to tax and certain charitable contribution deductions will be given effect in the Rule 155 computation. The issues for decision are: (1) Whether petitioners are entitled to an interest *574 deduction of $ 1,075 under section 163(a); and (2) whether petitioners are entitled to $ 21,075 of charitable contribution deductions under section 170. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in South Pasadena, California, at the time of filing their petition herein. Petitioners deducted interest of $ 31,687 on Schedule A of their 1985 Federal income tax return. Respondent in his notice of deficiency disallowed $ 1,075 of the interest deduction due to the lack of substantiation. Petitioners did not have any documentary evidence, such as a Form 1098 statement or a check, to substantiate the interest payment of $ 1,075. In April 1985, petitioners donated clothes, shoes, repairable furniture, and appliances to the Salvation Army. The Salvation Army issued a signed receipt to petitioners which listed the date, name, and address of donor, and a general description of the items donated. The receipt did not list an estimated value of the donated items. There is no evidence in the record as to the condition of the items donated to *575 the Salvation Army. Petitioners took a $ 300 charitable contribution deduction for the items listed above. Respondent concedes that a donation was made to the Salvation Army, but disagrees with petitioner as to the fair market value of the items donated. During taxable year 1985, petitioners claimed a $ 400 charitable contribution deduction for cash they gave to their children to donate to the Sunday school that the children attended. The church did not keep records of the children's donations. Petitioners did not keep records of the amounts contributed to the Sunday school class during taxable year 1985. In June 1985, William E. Straw (hereinafter petitioner), assisted in organizing and operating a seminar in Boulder, Colorado, that was sponsored by his church. Petitioner was a board member of an association that required his presence at the seminar. Petitioners claimed a $ 375 charitable contribution deduction for expenditures made incident to the rendition of services to a church. Petitioners had an American Express receipt verifying lodging expenses of $ 75 while staying at the Hilton Harvest in Boulder, Colorado. Petitioners presented no documentary evidence verifying *576 the other $ 300 petitioner purportedly spent in connection with the services rendered at the seminar. In September 1985, petitioners donated an 8-year old thoroughbred mare named Shadow Wood to the Jesse Hopkins Hinchee Foundation (hereinafter JHH Foundation). The JHH Foundation was a qualified section 501(c)(3) organization and is a charitable organization described in section 170(c)(2)(B). The JHH Foundation operates as a charitable organization and residence for mentally handicapped individuals. Petitioners purchased Shadow Wood on March 14, 1981, for $ 4,750. Between 1981 and 1985, petitioners incurred costs in training and exhibiting Shadow Wood. Petitioners' daughter was the primary rider of Shadow Wood during exhibitions. In 1985, their daughter's height increased, and she became too tall to properly show the horse. In September 1985, the opportunities to sell Shadow Wood were quite limited. Petitioners decided to donate Shadow Wood to a charitable organization and obtain the tax benefits of a charitable contribution deduction. Petitioners donated Shadow Wood to the JHH Foundation in September 1985, and the JHH Foundation sold Shadow Wood in the same month for $ 1,000. *577 The purchasers of Shadow Wood were Dr. and Mrs. Richard Mansmann. The Mansmanns were members of the board of directors of the JHH Foundation at the time they purchased Shadow Wood. The Mansmanns purchased Shadow Wood for purposes unrelated to the operation of the JHH Foundation. Petitioners claimed a $ 20,000 charitable contribution deduction for the donation of Shadow Wood. No written appraisal was secured by petitioners prior to or at the time of their donation. Petitioners did not attach a Form 8283 to their 1985 Federal income tax return. No expert report or expert testimony concerning the fair market value of Shadow Wood was admitted into evidence. Petitioner estimated the value at $ 20,000 on Schedule A of petitioners' 1985 tax return based on a verbal appraisal from an acquaintance who was a horse trainer. Respondent contends that petitioners failed to establish that Shadow Wood's fair market value was $ 20,000. Respondent argues that a reasonable allowance for petitioners' donation would be the $ 1,000 price at which Shadow Wood was sold to the Mansmanns. Alternatively, respondent contends that petitioners' $ 4,750 cost basis reflects the fair market value of Shadow *578 Wood. Petitioners contend that Shadow Wood's constant training and frequent exhibitions increased her fair market value significantly between 1981 and 1985, and that Shadow Wood's fair market value was $ 20,000 at the time of the donation in 1985. OPINION The first issue for consideration is whether petitioners are entitled to an interest deduction of $ 1,075 under section 163(a). Section 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." Petitioners have the burden of proving that the claimed interest payments were actually made. Rule 142(a). In the instant case, petitioners offered only unverified oral testimony, with no supporting documentary evidence, to substantiate a $ 1,075 interest payment. Petitioner did not corroborate his testimony with any statement from a financial institution purportedly receiving the payment or with his own written record. In Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), we held that the taxpayer failed to carry his burden of substantiation where the only evidence offered was the taxpayer's unverified oral testimony. Applying the rule in Hradesky, we conclude that *579 petitioners have failed to sustain their burden of proof and the interest deduction is disallowed. The next issue for consideration is whether petitioners are entitled to a $ 300 charitable contribution deduction for certain items donated to the Salvation Army. Section 170(a) provides that a deduction may be taken for "any charitable contribution * * * payment of which is made within the taxable year." Where a charitable contribution is made in property other than money, section 170 allows a deduction for the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. The question of fair market value is a factual one. Estate of DeBie v. Commissioner, 56 T.C. 876, 894 (1971); McGuire v. Commissioner, 44 T.C. 801, 806 (1965). In the instant case, petitioners offered a receipt from the Salvation Army evidencing the donation of clothes, shoes, repairable furniture, and appliances. No estimated value or detailed description of the items was included on the receipt, nor do we know the condition of the items donated. Respondent concedes that a donation was made but disagrees with the amount that *580 petitioners claimed as a charitable contribution deduction. Petitioners established that furniture, appliances, clothes and shoes were donated to the Salvation Army. On this record we find that the fair market value of the donated property was $ 150. Petitioners are therefore entitled to a charitable contribution deduction in the amount of $ 150 for the property donated to the Salvation Army. In respondent's deficiency notice, he disallowed as a charitable contribution deduction the $ 400 amount petitioners claimed as a donation to their children's Sunday school. No written record of these donations was maintained by petitioners or by the church. As stated in Hradesky v. Commissioner, supra, unverified oral testimony alone does not substantiate a disallowed deduction. Petitioners did not satisfy their burden of proof with respect to the $ 400 cash contribution to their children's Sunday school. Therefore, the $ 400 charitable contribution deduction will be disallowed. In his determination, respondent also disallowed a $ 375 charitable contribution deduction for unreimbursed expenditures made in connection with services rendered on behalf of a charitable *581 organization. We believe that petitioner performed volunteer work in connection with the seminar sponsored by his church. Unreimbursed expenditures made incident to the rendition of services to a qualifying charitable organization may constitute a deductible contribution. Sec. 1.170A-1(g), Income Tax Regs. Petitioner, however, only substantiated a $ 75 lodging expense at the Hilton Harvest in Boulder, Colorado. No receipt or other documentation was offered to substantiate the remaining $ 300 of expenses that petitioner claimed he incurred while performing volunteer work for the church-sponsored seminar. We therefore hold that petitioners are allowed a $ 75 charitable contribution deduction for the expenditures made incident to the rendition of services for their church. The final issue for consideration is whether petitioners are entitled to a $ 20,000 charitable contribution deduction for the donation of a thoroughbred mare to the JHH Foundation in September 1985. There is no dispute in this case that an actual donation was made to a qualified charitable donee under section 170(c). To determine the allowable deduction, however, we must determine the fair market value of *582 the donated property, to wit, "the price at which the property would change hands between a willing buyer and willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.
Petitioners purchased Shadow Wood for $ 4,750 in March 1981, and donated the mare to the JHH Foundation in September 1985. In the same month that the donation was made, Shadow Wood was sold to the Mansmanns for $ 1,000. Respondent contends that the transaction between the Mansmanns and the JHH Foundation represented a sale between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and therefore the fair market value of Shadow Wood was $ 1,000. We disagree with respondent's contention and find that the sale to the Mansmanns was not at arm's length. Both Dr. and Mrs. Mansmann were members of the board of directors of the JHH Foundation. As board members of the JHH Foundation, they held positions of authority with respect to the JHH Foundation and certainly could influence decisions made by the foundation. Moreover, petitioners had purchased Shadow Wood just 4 years earlier *583 for $ 4,750, and Shadow Wood remained in competition form at the time of the donation in 1985. We therefore reject respondent's suggested valuation of $ 1,000. Alternatively, respondent contends that the best indication of Shadow Wood's fair market value is petitioners' cost basis of $ 4,750. Respondent cites Chiu v. Commissioner, 84 T.C. 722, 736 (1985), to support the position that a taxpayer's cost basis in donated property can be the best evidence of fair market value. We agree with respondent that after considering all the surrounding facts in the instant case, the best evidence of Shadow Wood's value is petitioners' cost basis of $ 4,750. Petitioners argue that the cost of training and exhibiting Shadow Wood are improvement costs and should be reflected in an increased fair market value for the mare. However, petitioners made no attempt to verify or document the fair market value of Shadow Wood. Petitioners did not obtain a written appraisal at the time of the donation. Petitioners failed to submit, with their 1985 tax return, the information required for noncash contributions in excess of $ 500 as set forth in section 170. Petitioners did not utilize *584 an expert report or expert testimony as evidence to substantiate their claim that Shadow Wood's fair market value was $ 20,000. We find that petitioners failed to establish that Shadow Wood had a fair market value of $ 20,000. We hold that the donated property had a value of $ 4,750 at the time of donation, and petitioners therefore are entitled to a $ 4,750 charitable contribution deduction for such property. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩