T.C. Summary Opinion 2021-11

UNITED STATES TAX COURT

FRED LAVAT FREDERICK-BEY AND MONICA NOBLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1341-19S.                     Filed May 17, 2021.

Fred Lavat Frederick-Bey and Monica Noble, pro sese.

<u>Ryan Z. Sarazin</u> and <u>Bartholomew Cirenza</u>, for respondent.

SUMMARY OPINION

GREAVES, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463[1] of the Internal Revenue Code in effect when the petition was filed.

_____

[1]Unless otherwise noted, all section references are to the Internal Revenue
Code in effect for the relevant times, and all Rule references are to the Tax Court
Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $12,902 deficiency and a $2,580 section 6662(a) accuracy-related penalty for petitioners' 2016 tax year (year at issue). After respondent's concessions, the only issue left for decision is whether petitioners are entitled to deductions claimed on Schedule C, Profit or Loss From Business.[2] We decide this issue in respondent's favor.

## Background

The parties filed a stipulation of facts that is incorporated by this reference. Petitioners resided in Maryland when they timely petitioned this Court.

Petitioner husband worked for the Department of Defense until 2011, when he left on account of a work-related injury. He thereafter sought a new career in network marketing. In 2013, he affiliated with Syntek Global, Inc. (Syntek) d.b.a. LivElite International, which marketed "Xtreme Fuel Treatment" (XFT). XFT allegedly prolonged a car's engine life, improved gas mileage and vehicle performance, and reduced harmful emissions and pollutants. Syntek directly

---

[1](...continued)
dollar.

[2]Respondent has conceded the accuracy-related penalty.

marketed and distributed XFT to the public through third-party affiliates. These affiliates earned commissions not only by selling XFT but also by recruiting new Syntek affiliates. Any new recruits became downline distributors, and the "originating" affiliate would receive a commission from the downline XFT sales.

Petitioner husband had the initial drive to succeed in network marketing. He purchased advertising materials from Syntek in 2015, and he produced and distributed a flyer to entice people to buy and/or sell XFT. Unfortunately for petitioner husband, his recruiting efforts fell flat. After approximately five years as a Syntek affiliate, he stopped marketing XFT.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for the year at issue. They included with the Form 1040 a Schedule C reporting income and expenses from petitioner husband's Syntek business. On the Schedule C they reported gross income of $7,500 and expenses of $59,909, which produced a net loss of $52,409. The reported expenses included advertising ($15,010), car and truck ($14,000), insurance ($9,837), legal and professional services ($9,500), and the following "other" ($11,562):

| Expense | Amount |
| --- | --- |
| Cell phone | $935 |
| Dues | 4,125 |
| Card magnets | 3,217 |
| Embroidery | 1,238 |
| Computer and inet fees et (sic) | 1,092 |
| Folders | 955 |

Following an examination of petitioners' 2016 Form 1040, respondent determined that petitioners either failed to substantiate, or were not otherwise entitled to deduct, the expenses reported on the Schedule C. Respondent issued a notice of deficiency to petitioners disallowing deductions for all reported expenses on their Schedule C.

## Discussion

The Commissioner's determinations set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

A taxpayer may generally deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a);

cf. sec. 262(a) (disallowing deductions for personal, living, or family expenses); sec. 1.162-2(e), Income Tax Regs. (commuting expenses not deductible). Respondent does not challenge whether petitioner husband engaged in a "trade or business" with the intent to earn a profit. See secs. 162(a), 183(a). Rather, the issue in dispute is whether petitioners have established that the reported expenses were "ordinary and necessary" in petitioner husband's Syntek business.

An expense is "ordinary" if it is customary or usual within a particular trade, business, or industry or relates to a common or frequent transaction in the type of business involved. See Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is appropriate and helpful to the operation of the taxpayer's business. See Commissioner v. Tellier, 383 U.S. 687, 689 (1966). The taxpayer bears the burden of proving that reported expenses are ordinary and necessary. Sec. 6001; Rule 142(a); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

Petitioners produced a spreadsheet, bank statements, and credit card statements to establish the deductibility of the expenses reported on the Schedule C. The spreadsheet includes an explanation for why certain expenses reported on the Schedule C were "ordinary and necessary"; however, petitioners fail to tie the expenses listed in the spreadsheet to either the credit card statements

or the bank statements. Similarly, petitioners highlighted more than 100 purchases listed on their bank statements and credit card statements but failed to adequately explain how each charge or withdrawal was an "ordinary and necessary" business expense. For example, petitioners highlighted a credit card purchase at Walmart for $75.43 but never explained how the charge related to petitioner husband's Syntek business. As another example, petitioners circled a payment made to GEICO from petitioner wife's bank account, but they never explained the type of insurance coverage or how it was "ordinary and necessary" in petitioner husband's business.

We recognize that petitioners may have incurred expenses related to petitioner husband's Syntek business during the year at issue; however, petitioners failed to carry their burden of proving that the charges and withdrawals represented "ordinary and necessary" business expenses as opposed to nondeductible personal expenses.[3] See sec. 262. Accordingly, we sustain respondent's adjustments.

---

[3]The only evidence that establishes a business expense are credit card statements from 2015. These statements show charges for purchases from Syntek that petitioners labeled "advertising". No such purchases from Syntek appear on any 2016 credit card statement.

To reflect the foregoing,

Decision will be entered under

Rule 155.