T.C. Summary Opinion 2021-22

UNITED STATES TAX COURT

TONDALAYA GAMBLE AND RONALD JAMISON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19054-16S.                                    Filed July 28, 2021.

Tondalaya Gamble, pro se.

<u>Megan E. Heinz</u> and <u>Michael T. Shelton</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463[1] of the Internal Revenue Code in effect when the

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended and in effect for the relevant period.  Rule references
are to the Tax Court Rules of Practice and Procedure.

petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency (notice) respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties for 2013 and 2014.

The issues for decision are whether: (1) for either year petitioners[2] are entitled to various trade or business expense deductions; if so, (2) for either year any such deductions are properly reportable on Form 1120S, U.S. Income Tax Return for an S Corporation, as petitioners claim, or whether such deductions, if otherwise allowable, must be claimed as unreimbursed employee business expense deductions on Schedule A, Itemized Deductions; (3) petitioners are entitled to a gambling loss deduction for 2013 in excess of the amount respondent allowed; and (4) petitioners are liable for a section 6662(a) accuracy-related penalty for either year in issue.

---

[2]Ronald Jamison neither appeared at trial nor signed the stipulation of facts. Accordingly, the case has been dismissed as to him for lack of prosecution. See Rule 123. The decision to be entered with respect to him, however, will be consistent with the decision to be entered with respect to Tondalaya Gamble (petitioner).

## Background

Some of the facts have been stipulated and are so found. When the petition was filed, petitioners resided in Illinois.

Petitioner is a medical doctor with a specialty in obstetrics and gynecology. During the years in issue she was employed full time by Cook County Hospital (CCH) and part time by Little Company of Mary Hospital (LCMH). Each hospital treated petitioner as an employee, reported her wages on Form W-2, Wage and Tax Statement, furnished her with malpractice insurance, and handled billing and collection for the medical services she provided to the patients of the hospitals.

On or around April 22, 1999, petitioner incorporated Total Woman Wellness, SC (TWW), a corporation organized under the laws of Illinois. Petitioner formed TWW to serve and educate both physicians and the community through lectures and consultations. To the extent that any TWW stock was ever issued, petitioner owned all of it. Other of petitioner's family and professional obligations prevented her from operating TWW in the manner originally intended. At trial she explained that during 2013 and 2014 she was herself still being educated and trained in subspecialties that she intended to promote through TWW.

During 2013 Mr. Jamison routinely purchased lottery tickets from a vendor near petitioners' home. He did not maintain a log or written record showing his

lottery winnings or losses. Instead, during respondent's examination of petitioners' 2013 and 2014 returns, petitioners prepared an after-the-fact log of his lottery ticket purchases. The log shows no lottery winnings. According to the log, Mr. Jamison purchased $40 of lottery tickets almost every day of 2013.

Petitioners' timely filed joint 2013 and 2014 Federal income tax returns were prepared by a paid income tax return preparer who had prepared their returns for many years before the years in issue. As relevant here, each return shows: (1) the amounts reported on Forms W-2 issued to petitioner by CCH and LCMH; (2) unreimbursed employee business expense deductions claimed on a Form 2106, Employee Business Expense, and not in dispute; and (3) a pro rata share of a loss from TWW reported on a Schedule E, Supplemental Income and Loss. The same return preparer that prepared petitioners' returns also prepared the Forms 1120S for TWW. Petitioners' 2013 return also includes $15,000 of gambling winnings that were reported on Form W-2G, Certain Gambling Winnings, and a $12,480 gambling loss deduction claimed as an itemized deduction on the Schedule A included with that return.

No income is reported on TWW's 2013 return; $680 of income is reported on TWW's 2014 return. TWW's 2013 and 2014 returns claimed deductions of $20,605 and $20,040, respectively. As noted, petitioner's pro rata shares of

TWW's net operating losses of $20,605 and $19,360 for 2013 and 2014, respectively, are taken into account in the computation of the adjusted gross income shown on petitioners' returns.

In the notice respondent: (1) disallowed the S corporation loss deductions claimed on the Schedules E for 2013 and 2014; (2) recharacterized the amount shown as "gross receipts" on the Form 1120S for 2014 as "other income" on line 21 of petitioners' Form 1040; (3) determined that many of the expenses reported on the Forms 1120S are properly treated as deductions for unreimbursed employee business expenses on petitioners' Schedules A and did not allow deductions for the remaining expenses because they were nondeductible personal expenses or were already reported on petitioners' Schedules A; (4) disallowed $6,558 of the $12,480 gambling loss deduction claimed on the 2013 return; and (5) imposed a section 6662(a) and (b)(1) and (2) accuracy-related penalty for each year on several grounds, including "[n]egligence or disregard of rules or regulations" and "substantial understatement of income tax". Some of the adjustments made in the notice are computational and will not be discussed.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish

entitlement to any claimed deduction.[3]  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to substantiate expenses for deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976); <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  <u>See</u> sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

In this case the "statutory provision[s]" are section 162, which, in general, allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, <u>see</u> <u>Boyd v. Commissioner</u>, 122 T.C. 305, 313 (2004), and section 212(1), which, in general, allows a

---

[3]Petitioners do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) need be applied here, and we proceed as though they do not.

deduction for ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income.

An expense is deductible under section 162 only if it is paid or incurred while the taxpayer is "carrying on" a trade or business, not before. See Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965). Personal expenses, on the other hand, may not be deducted. See sec. 262(a).

With these fundamental principles in mind, we turn our attention to the deductions here in dispute.

I. Trade or Business Expenses

According to petitioners, the expense deductions claimed on TWW's Forms 1120S for 2013 and 2014 constitute trade or business expenses paid or incurred by TWW, and the resultant losses those deductions created flow through to petitioners under the rules applicable to S corporations. Respondent agrees that petitioner is entitled to business expense deductions for many, or at least portions of many, of the expense deductions claimed on TWW's returns, but only as employee business expenses relating to petitioner's employment with CCH and LCMH. According to respondent, recharacterizing many of the expenses is appropriate under the circumstances because: (1) TWW was not engaged in an

active trade or business during 2013 and 2014; (2) petitioner was engaged in an active trade or business as an employee of CCH and LCMH; (3) to the extent that the expenses were paid, they were paid by petitioner; and (4) the expenses relate to petitioner's employment with CCH and LCMH. Respondent further notes that some of the disallowed expense deductions are for nondeductible personal expenses and others are duplicative of deductions already claimed on petitioners' Schedules A attached to their 2013 and 2014 returns, points not disputed by petitioners.

In considering whether a taxpayer's activity constitutes a trade or business within the meaning of section 162(a), we consider whether the activity was conducted with continuity and regularity and as a means of earning a living. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). More fundamentally, before a section 162(a) deduction is allowable, we consider whether the business actually commenced. See Richmond Television Corp., 345 F.2d at 907.

Petitioner's generalized testimony describing TWW's activity hardly suggests, much less establishes, that during either year TWW was conducted with continuity and regularity as a means of earning a living, or that the corporation had "begun to function as a going concern and performed those activities for which it was organized," as of the close of 2014. See id. That being so, respondent's

disallowances of the expense deductions claimed by TWW must be sustained, and it follows that the disallowances of the pro rata shares of TWW's loss deductions claimed on petitioners' returns must also be sustained. Be that as it may, because the expenses to which the deductions relate were apparently paid by petitioner, respondent recognized that many of those expenses could properly be considered and treated as employee business expenses and the adjustments made in the notice proceed accordingly. Otherwise, petitioners have failed to establish that any of the adjustments relating to TWW or petitioners' unreimbursed employee business expense deductions are erroneous. Consequently, all of those adjustments are sustained.

## II. Gambling Loss Deduction

Petitioners reported gambling income of $15,000 and claimed a gambling loss deduction of $12,480 for 2013. Respondent disallowed $6,558 of the $12,480 gambling loss deduction for lack of substantiation.

Gambling losses of nonprofessional gamblers are deductible as an itemized deduction in arriving at taxable income, sec. 63(a); Calvao v. Commissioner, T.C. Memo. 2007-57, but only to the extent of gambling winnings, sec. 165(d); sec. 1.165-10, Income Tax Regs. In the case of gambling winnings and losses taxpayers can substantiate their income and deductions by maintaining a

contemporaneous log or other written record. See Schooler v. Commissioner, 68 T.C. 867, 871 (1977).

Mr. Jamison did not keep contemporaneous records of his winnings and losses, nor did he testify at trial. The only evidence petitioners offered in support of the gambling loss deduction claimed on their return was the log prepared during respondent's examination of their 2013 and 2014 returns, and that log is hardly persuasive. There are no winnings reported at all on the log, and given the extent of lottery ticket purchases shown on the log, we consider it highly unlikely that the only winnings enjoyed by petitioners were reported on the Form W-2G. The record does not reveal what, if any, substantiation petitioners provided to respondent during the examination to allow for at least a portion of the deduction. On the basis of the evidence presented to us, we find that petitioners have failed to establish that they are entitled to a gambling loss deduction for 2013 in excess of the amount respondent allowed.

III. Accuracy-Related Penalties

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty for either year in issue. Relying upon various grounds, respondent argues that petitioners are liable for penalties for both years in issue. See sec. 6662(a)-(d).

Petitioners' Federal income tax return for each year in issue was prepared by a paid income tax return preparer. Petitioners used the same return preparer for many years before the years in issue. Petitioners routinely turned over their tax and financial records for each year to the return preparer, and one or both of them discussed the preparation of the return. Petitioner's presentation at trial satisfies us that petitioners reasonably relied upon their return preparer to do what they paid their return preparer to do. Under the circumstances we find that petitioners had reasonable cause for the underpayment of tax required to be shown on their return for each year in issue, and that they acted in good faith with respect to those underpayments. See sec. 6664(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Petitioners are not liable for the section 6662(a) accuracy-related penalty for either year in issue.

To reflect the foregoing,

Decision will be entered for respondent with respect to the deficiencies and for petitioners with respect to the section 6662(a) accuracy-related penalties.